**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| J.M. WOODWORTH RISK RETENTION GROUP, INC., a Nevada Captive Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>UNI-TER UNDERWRITING MANAGEMENT CORPORATION, a Delaware Corporation; UNI-TER RISK MANAGEMENT SERVICES CORPORATION, a Delaware Corporation; UNI-TER CLAIMS SERVICES CORPORATION, a Delaware Corporation; US RE AGENCIES, INC., a Delaware Corporation; STATE OF NEVADA, DIVISION OF INSURANCE OF THE DEPARTMENT OF BUSINESS AND INDUSTRY; DOES I- X; and ROE ENTITIES XI through XX,<br><br>Defendants | Case No.: 13-cv-0911-JAD-PAL<br><br>**Order Directing Additional Briefing on Emergency Motion to Remand to State Court (No. 5), Granting the State of Nevada's Motion to Dismiss (No. 10), Granting in Part the Motion to Compel Arbitration (No. 11), Denying Motion to Stay Discovery (No. 21), Granting Motion for Leave to File a Surreply (No. 22), Denying the Emergency Motion to Stay Arbitration Awaiting Decisions on the Parties' Pending Motions (No. 25), and Staying this Action Pending Arbitration** |

Currently before the Court are Plaintiff J.M. Woodworth's ("JMW's") Emergency Motion to Remand to State Court, Doc. 5; the State of Nevada, Division of Insurance of the Department of Business and Industry's ("the Division's") Motion to Dismiss, Doc. 10; Uni-Ter Underwriting Management Corporation, Uni-Ter Risk Management Services Corporation, Uni-Ter Claims Services Corporation (collectively, "the Uni-Ter Defendants") and US RE Agencies, Inc.'s Motion to Dismiss and/or Stay Action and to Compel Arbitration, Doc. 11; the Uni-Ter Defendants' and US RE's Motion to Stay Discovery, Doc. 21; the Uni-Ter Defendants' and US RE's Motion for Leave to

1  File a Sur-Reply in Further Opposition to JMW's Emergency Motion to Remand, Doc. 22; and
2  JMW's Emergency Motion to Stay Arbitration Awaiting Decisions on the Parties' Pending Motions,
3  Doc. 25.
4        Having reviewed and considered all of the parties' papers in support of these various
5  motions, and with good cause appearing and based upon the reasons set forth below, the Court now
6  GRANTS the State's Motion to Dismiss, Doc. 10, GRANTS in part the Motion to Compel
7  Arbitration, Doc. 11, and GRANTS the Motion for Leave to File a Surreply, Doc. 22; DENIES
8  JMW's Emergency Motion to Stay Arbitration, Doc. 25; stays this action in its entirety pending the
9  completion of the arbitration hearing; denies the motion to stay discovery, Doc. 21, as moot; and
10 directs the Plaintiff to provide supplemental briefing in support of its Motion to Remand, Doc. 5, as
11 described below.

12 **A.    Motion to Remand (No. 5 and No. 22)**

13       This action was commenced in the Eighth Judicial District Court, Clark County, Nevada.
14 The caption of JMW's Amended Complaint, filed on May 20, 2013, alleges that Plaintiff is "a
15 Nevada Captive Corporation," and the first paragraph of the General Allegations section states that
16 "JMW is, and was at all times relevant attached hereto, a Nevada corporation, domiciled in Nevada
17 as an association captive insurer under NRS Chapter 694C, and operating pursuant to the Federal
18 Liability Risk Retention Act of 1986, 15 USC § 3901-3906." Doc. 1-2 at 1.
19       The Uni-Ter Defendants removed this action based upon diversity of citizenship, contending
20 in their Petition for Removal that the parties are completely diverse. Although JWM alleges that
21 both it and the Division are Nevada citizens, the Uni-Ter Defendants assert that the Division was
22 "fraudulently joined" because Plaintiff asserts no claims against this defendant and, therefore, that
23 the Division's citizenship must be disregarded. Doc. 1 at 2–5. Plaintiff moved to remand the case,
24 contesting the ability to disregard the Division's citizenship and arguing that the Division is an
25 interested party and that Plaintiff has stated a valid declaratory relief claim against it. *See generally*
26 Doc. 5. Then, in its reply in support of the motion to remand, JMW offered the new argument that
27 JMW is not completely diverse from the Uni-Ter Defendants because "JMW's principal place of
28 business is not Nevada. Rather . . . JMW's principal place of business is either in Georgia, where its

headquarters are located, or New York, where the majority of its high-level corporate officers and directors are located," while the Uni-Ter Defendants' headquarters are in Alpharetta, Georgia, and Defendant US RE keeps its principal place of business in New York. Doc. 15 at 2-7.

JMW acknowledged that the disavowal of its Nevada citizenship was a new argument raised for the first time in its reply brief. Doc. 15 at 3 n.2. The Uni-Ter Defendants moved for leave to file a surreply in which they point out that the Nevada captive corporation statute, on which JMW bases its allegation in its Amended Complaint that "JMW is "a Nevada corporation, domiciled in Nevada as an association captive insurer under NRS Chapter 694C," Doc. 1-2 at 1, requires a captive insurer to maintain its principal place of business in Nevada. Doc. 22 at 3 (citing NEV. REV. STAT. § 694C.310(1)(a)). The Uni-Ter Defendants argue that JMW is required, as a captive insurer, to keep its principal place of business in Nevada. *Id.* at 6. Thus, it must be a Nevada citizen for diversity purposes. *Id*.

The Court finds that the Uni-Ter Defendants' surreply was necessitated by the belated assertion of this argument by JMW, GRANTS leave to file the Surreply, Doc. 22, and now DIRECTS JMW to file a response to that Surreply no later than 10 days after the date of this Order, for the limited purpose of explaining how JMW can be—as it alleges in paragraph 1 of its Amended Complaint—"a Nevada corporation domiciled in Nevada as an association captive insurer under NRS Chapter 694C," yet have its principal place of business in Georgia or New York. The Court will defer decision on the Motion to Remand until it has considered JMW's additional briefing.

**B.    The Division's Motion to Dismiss (No. 10)**

The Division filed a Motion to Dismiss Complaint Pursuant to FRCP 12(b)(1) and 12(b)(6). Doc. 10. The Division contends that this action is a contract dispute against the Uni-Ter Defendants and US RE, that the Amended Complaint does not allege any facts or claims against the Division, and that the only claim "mention[ing] the Division is not ripe and is not justiciable." *Id.* at 2. It further argues that its status as a defendant in this case is precluded by the Eleventh Amendment. *Id*. at 5. JMW opposes the Division's motion, notes that it did not choose to bring the action in federal court—it was removed to federal court by the Uni-Ter and US RE Defendants—and argues that the Division is a necessary party to this action because JMW seeks relief "that affects the

Division." Doc. 16 at 8.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558 (quoting 5 Wright & Miller § 1216, at 233–234).

The Court has scoured JMW's Amended Complaint for any facts that state a claim for relief against the Division and finds none. Even when all factual allegations are taken as true and construed in the light most favorable to JMW,[1] the Amended Complaint simply does not articulate any cause of action or prayer for relief against the Division. JMW names the Division as a defendant on the conclusory legal allegation that the Division "would be affected by any declaratory relief entered in this matter." Doc. 1-2 at ¶ 9. The Court does not find any allegations in the Amended Complaint to support the likelihood of such an impact on the Division; regardless, such an effect is insufficient to merit inclusion of the Division as a defendant in this case.

As the Division accurately summarizes, the crux of this case is a contract dispute between JMW on the one hand and the Uni-Ter Defendants and US RE on the other. JMW's substantive claims allege breach of contract and breach of the covenant of good faith and fair dealing. Doc. 1-2 at 11–13. JMW seeks damages for those alleged breaches and further alleges that those contractual disagreements are justiciable controversies for which declaratory relief is necessary and appropriate. *Id.* JMW further contends that it is entitled to a "declaratory judgment interpreting the provisions of the Nevada Insurance Code . . . such that the Court or the Division orders the Uni-Ter Defendants to

---

[1] All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Washington Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996)).

immediately return JMW's properties, accounts, files, documents, books, reports, work papers and other records." *Id*. at 15.  And it seeks a separate declaratory judgment against US RE as to the viability of a "revised broker authorization contract" purportedly executed "by Carolyn Verde as 'President and CEO of JWM.'"  *Id*. at pp. 5–6, 15–16.

None of these claims alleges any liability of, or right to relief for or from the actions of, the Division.  The closest that JMW comes to pleading such allegations is its request for the Court to interpret provisions of the Nevada Insurance Code in a way that might cause the Division to take some action against JMW.  But JMW does not pray for an order directing the Division to do anything or to provide JMW any relief from the actions of the Division.  Even if JMW were to ultimately succeed on all of its claims and be awarded all the relief prayed for, the Division would be unaffected by that disposition based on the allegations as they appear in the Amended Complaint.

The allegations that JMW "notified the Division" of acts by JMW and "requested the Division's assistance in directing the Uni-Ter Defendants to cooperate with JMW and provide access to JMW's business records and files" also fall short of stating any claim or facts to support a claim for relief.  Doc. 1-2 at ¶¶64–65.  JMW does not allege that the Division failed to act in violation of any duty or legal requirement that might give rise to a right to judicial relief (assuming, of course, that the Division is not immune from suit under the Eleventh Amendment[2]) or that JMW exhausted any administrative remedies that would have to be requested prior to seeking judicial relief.  Any possible claim against the Division arising out of such facts is, at best, premature.  *See, e.g.*, *Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 993–94 (Nev. 2007); *Crane v. Continental Tele. Co. of Cal.*, 775 P.2d 705, 706 (Nev. 1989).

JMW's opposition argument is simply that the Division is a necessary party because JMW is an entity regulated by the Division, and any interpretation of the applicable regulatory provisions that this Court may provide in adjudicating JMW's declaratory relief claims "may" affect the Division.  Doc. 16 at 7–9.  That future possibility, however, is not enough to maintain the Division as a defendant in this case, particularly when it has, by this motion, disclaimed any interest in this

---

[2] As the Court is dismissing the Division from this action on FRCP 12(b)(6) grounds, it is unnecessary to address the Division's 12(b)(1) immunity argument at this time.

dispute. *See, e.g.*, *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008) (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (recognizing that the "interest must be more than . . . speculation about a future event.")).

In sum, Plaintiff has failed to allege any cognizable claim for relief against the Division to survive this FRCP 12(b)(6) challenge. The action is hereby dismissed as against the Division pursuant to FRCP 12(b)(6).

## C.     The Arbitration Motions (No. 11 and No. 25)

On June 12, 2013, the Uni-Ter Defendants and US RE filed a Motion to Dismiss and/or Stay Action and to Compel Arbitration, Doc. 11, asking this Court to compel all of the parties to arbitrate all of the claims in JMW's Amended Complaint based on identical arbitration clauses in three agreements between JMW and Uni-Ter Underwriting, Uni-Ter Risk, and Uni-Ter Claims, respectively, Docs. 11-1, 11-2, 11-3, and to stay this action pending the completion of that arbitration. JMW opposed the motion, Doc. 17, and, on August 2, 2013, with an arbitration hearing scheduled for September 12, 2013, filed an Emergency Motion for Stay of Arbitration Awaiting Decision on the Parties' Pending Motions. Doc. 25.

"It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs, Inc v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). "Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir.2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)). This Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id*. at 1130.

The arbitration issue in this case is governed by three agreements (the "Management Agreements") that contain arbitration provisions between certain parties to this action:

    1.      The Claims Services Management Agreement between JMW and Uni-Ter Claims Services, Doc. 11-1;

    2.      The Risk Management Consulting Services Agreement between JMW and Uni-Ter Risk, Doc. 11-2; and

    3.      The Management Agreement between JMW and Uni-Ter Underwriting, Doc. 11-3.

Each of these Management Agreements[3] provides:

    A.      <u>Submission to Arbitration</u>: Any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire meeting at the JMW offices in Nevada unless otherwise mutually agreed.

Docs. 11-1 at § X, 11-2 at § X, and 11-3 at § XII. No party disputes the validity or enforceability of these arbitration provisions.[4] The dispute centers instead on the scope of application of these provisions: the Uni-Ter Defendants and US RE ask the Court to compel arbitration of all claims against all parties in the Amended Complaint. JMW contests the application of these clauses to its claims against US RE, which is not a party to these Management Agreements, and because the contract between JMW and US RE does not contain an arbitration provision. Doc. 25 at 9; Doc. 5-1 at 9. The Court agrees with JMW's position.

    ***1.    JMW's Claims against the Uni-Ter Defendants***

JMW's claims against all three Uni-Ter Defendants, as alleged in the Amended Complaint, all appear to arise out of the Management Agreements in which the arbitration clauses are contained. The first claim alleges the breach of these contracts. Doc. 1-2 at 12. The second alleges the breach of the implied duty of good faith and fair dealing in these contracts. *Id*. at 12–13. The third claim seeks declaratory relief "regarding the obligations of the parties pursuant to the Management Agreements," and thus arises out of these agreements, too. *Id*. at 13–14. The fourth count seeks a

---

[3] The FAA applies to arbitration agreements contained in contracts involving interstate commerce. As agreements between parties domiciled in different states and operating in many states, these agreements involve interstate commerce within the meaning of the FAA. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'– words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").

[4] JMW acknowledges that disputes arising under the Management Agreements are arbitrable. *See* Doc. 25 at 8.

declaration that the Uni-Ter Defendants' retention of books, records, and documents "is a clear violation of Nevada law," and this claim appears also to be based upon the provisions in these Management Agreements regarding "JMW Property" and "Accurate Records," bringing it under the umbrella of disputes arising out of these agreements. *See id*. at 8–9, 15 (quoting these provisions from the Management Agreements);[5] *see also Comedy Club, Inc.*, 553 F.3d at 1284 (quoting *AT&T Techs, Inc v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). The Court finds that JMW's first through fourth claims for relief as against the Uni-Ter Defendants are subject to the arbitration agreement and must, therefore, be resolved in accordance with the parties' contracted terms.

### 2. *JMW's Claims against US RE*

The same cannot be said for JMW's claims against US RE. US RE is not a party to any of the Management Agreements that contain the arbitration clauses, and the scope of those arbitration clauses is limited to disputes "arising out of" those agreements themselves. *Id*. Thus, based upon the documentation provided to this Court at this time, it appears that US RE lacks the ability to compel JMW to arbitrate its claims against US RE.[6]

US RE argues that JMW's claims against it should be compelled to arbitration under the doctrine of estoppel and notes that courts have allowed non-signatories to a contract containing an arbitration clause to invoke arbitration. Doc. 11 at 7–9. Generally, the contractual right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993). The FAA "imposes certain rules of fundamental importance, including the basic precept that

---

[5] The fifth claim for relief addresses only the Broker of Record Letter Agreement with US RE. *Id*. at 15-16.

[6] The claims alleged against US RE include: JMW's first, second, and fifth counts to the extent they seek relief regarding the Broker of Record Letter Agreement between JMW and US RE, and JMW's fourth count, which asks for additional relief against the Uni-Ter Defendants and US RE. Doc. 1-2 at ¶ 6.

arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Univ.*, 489 U.S. 468, 479 (1989)). Thus, "only disputes 'that the parties have agreed to submit to arbitration' should be arbitrated." *Comedy Club*, 553 F.3d at 1285 (quoting *First Opinions of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Although courts have recognized that a non-signatory may enforce an arbitration agreement against a signatory under the doctrine of estoppel, *see, e.g.*, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013), those cases are inapposite here. US RE is not a non-signatory attempting to enforce one of the arbitration agreements into which JMW entered. It would do US RE no good to enforce the arbitration clauses in the Management Agreements against JMW because those clauses are limited in scope to disputes arising out of those Management Agreements and therefore would not cover or require the arbitration of JMW's claims arising out of the US RE Broker of Record Letter Agreement or its purported amendment. *See* Docs. 11-1, 11-2, 11-3. Thus, what US RE is really arguing is that the Court should read the same arbitration clause into the agreements between JMW and US RE such that JMW should be compelled to arbitrate its disputes against US RE, too. The cases cited by US RE and the Uni-Ter Defendants do not support such an extension of the arbitration jurisprudence in this regard, and this Court is not at liberty to rewrite the agreement between JMW and US RE to include an arbitration provision or expand the arbitration clauses in the Management Agreements to cover these claims. *Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 258 (Nev. 2012) (quoting *Royal Indem. Co. v. Special Serv.*, 413 P.2d 500, 502 (Nev. 1966) (writing that "[w]hen interpreting a written agreement between parties, this court 'is not at liberty, either to disregard words used by the parties . . . or to insert words which the parties have not made use of.'")).

Although this Court recognizes the economy of arbitrating JMW's claims against US RE at the same time it arbitrates its claims against the Uni-Ter Defendants, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement.'" *Comedy Club*, 553 F.3d at 1287 (quoting *Buckner v. Tamarin*, 119 Cal. Rptr. 2d 489, 489 (Cal. Ct. App. 2002) (internal quotation marks omitted)); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844,

847–48 (9th Cir. 2013) (refusing non-signatory's request to enforce arbitration agreement against signatory under equitable estoppel where the claims between those parties did "not arise out of or relate to the contract that contained the arbitration agreement" and reasoning that "[w]e have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here."); *Comer v. Micor, Inc.,* 436 F.3d 1098, 1104 n. 11 (9th Cir. 2006) (when a question arises as to whether "a particular party is bound by the arbitration agreement," "the liberal federal policy regarding the scope of arbitrable issues is inapposite."). As US RE has not identified any agreement containing JMW's agreement to arbitrate its claims against US RE, this Court may not compel JMW to arbitrate those claims. Accordingly, the Court compels arbitration only of JMW's claims against Uni-Ter Underwriting, Uni-Ter Risk, and Uni-Ter Claims "arising out of" the Management Agreements, which include only the following: (1) the first claim for relief (breach of contract) to the extent it alleges a breach of the Management Agreements, (2) the second claim for relief (breach of the covenant of good faith and fair dealing) to the extent it alleges a breach of such a covenant in the Management Agreements, (3) the third claim for relief, and (4) the fourth claim for relief to the extent it is asserted against Uni-Ter Underwriting, Uni-Ter Risk, and/or Uni-Ter Claims.

**D.     Stay Pending Arbitration**

As JMW's claims against the Uni-Ter Defendants are subject to arbitration, the Court must next determine how to handle those claims and the non-arbitrable claims during the pendency of the arbitration proceeding. The Uni-Ter Defendants and US RE ask this Court to dismiss or stay this action in its entirety. Doc. 11 at 9.

The FAA provides that where the court determines that an issue is governed by an arbitration clause, court proceedings must be stayed to permit arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The federal courts have interpreted this provision to "enable litigation to be stayed pending arbitration even if only one of the issues in the litigation is subject to an agreement to arbitrate." *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996). "The decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th Cir. 1996).

The Court finds that litigation and judicial economy justify staying this federal court action in its entirety pending the conclusion of the arbitration hearing. Although the Court does not find that JMW's contract claims against US RE and the Uni-Ter Defendants overlap in such a way that they should also be subject to arbitration, the resolution of some of the issues or claims against the Uni-Ter Defendants may result in the elimination of certain issues against US RE (such as the fourth claim for relief regarding the return of books, records, and other documents), and the risk of inconsistent results justifies a full stay. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n. 23 (1983); *Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983) (upholding the stay of an action and noting that "[w]hile it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action."). This conclusion is based, in part, on the expeditious nature of the arbitration clauses at issue, which requires the arbitration hearing be conducted "no later than one hundred twenty (120) days from the date that the notice requesting arbitration is mailed," Docs. 11-1, 11-2, 11-3, and JMW's representation that the arbitration has been scheduled for September 12, 2013, under this provision.[7] Although the Court recognizes that some delay in that arbitration hearing date may be necessitated due to the issuance of this decision on the eve of the scheduled date, the Court does not anticipate that this delay will be lengthy. The Court finds that any delay or prejudice that this all-parties/all-claims stay may cause in the litigation of JMW's claims against US

---

[7] As the arbitration has been scheduled, it does not appear to the Court at this time that the applicant for the stay is in default in proceeding with the arbitration such that a stay should be denied under the FAA. *See* 9 U.S.C. § 3.2.

RE will be minimal and is outweighed by the benefits of the stay.

## Order

Accordingly, for all the reasons set forth above and good cause appearing, it is hereby ORDERED, ADJUDGED AND DECREED that the State of Nevada, Division of Insurance's Motion to Dismiss, **Doc. 10, is GRANTED** and the State of Nevada, Division of Insurance is hereby dismissed from this action;

It is further ORDERED that the Uni-Ter Defendants' and US RE's Motion to Dismiss and/or Stay Action and to Compel Arbitration, **Doc. 11, is GRANTED IN PART**, and J.M. Woodworth's Emergency Motion to Stay Arbitration Awaiting Decisions on the Parties' Pending Motions, **Doc. 25, is DENIED**. JMW's claims against Uni-Ter Underwriting, Uni-Ter Risk, and Uni-Ter Claims "arising out of" the Management Agreements, which include only the following: (1) the first claim for relief (breach of contract) to the extent it alleges a breach of the Management Agreements, (2) the second claim for relief (breach of the covenant of good faith and fair dealing) to the extent it alleges a breach of such a covenant in the Management Agreements, (3) the third claim for relief, and (4) the fourth claim for relief to the extent it is asserted against Uni-Ter Underwriting, Uni-Ter Risk, and/or Uni-Ter Claims shall be arbitrated in accordance with the Parties' agreements, and **this case is HEREBY STAYED** (except for this Court's further consideration and resolution of the motion to remand as set forth below) **pending the conclusion of the arbitration hearing**;

It is further ORDERED that the Uni-Ter Defendants' and US RE's Motion to Stay Discovery**, Doc. 21, is DENIED** as moot;

It is further ORDERED that the Uni-Ter Defendants' and US RE's Motion for Leave to File a Surreply in Further Opposition to JMW's Emergency Motion to Remand, **Doc. 22, is GRANTED**. JMW is **ORDERED to file a response to the Surreply within 10 days** from the filing of this order to specifically address the question of how JMW can be "a Nevada corporation domiciled in Nevada as an association captive insurer under NRS Chapter 694C," as it alleges in its Amended Complaint, yet have its principal place of business in Georgia or New York for purposes of its motion to

. . .

remand.  The Court will defer decision on JMW's Emergency Motion to Remand, Doc. 5, until after it has had the opportunity to consider JMW's brief in this regard.

DATED: September 11, 2013.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE